**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00792-RBJ

CENTER FOR LEGAL ADVOCACY
D/B/A DISABILITY LAW COLORADO,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
and
MOSES STANCIL, in his official capacity as
Executive Director of the Colorado Department of
Corrections,

      Defendants.

---

**ORDER APPROVING JOINT MOTION TO AMEND SETTLEMENT
AGREEMENT AND RENEWED REQUEST TO RETAIN JURISDICTION TO
ENFORCE AMENDED AGREEMENT**

---

Plaintiff, Center for Legal Advocacy d/b/a Disability Law Colorado ("Plaintiff") and Defendants, Colorado Department of Corrections and Moses Stancil ("Defendants"), have jointly moved this Court for entry of an Amended Settlement Agreement ("Amended Agreement") executed on January 13, 2025 and attached to their joint motion filed on January 15, 2025. The Amended Agreement is intended by the parties to supersede and replace the Release and Settlement Agreement ("Settlement Agreement") that was acknowledged and incorporated by the order of the Court on August 15, 2022. Doc. 74.

Upon review of the foregoing, for good cause shown, the Parties' Joint Motion to Amend Settlement Agreement and Renewed Request to Retain Jurisdiction to Enforce is GRANTED. The terms and conditions of the Amended Agreement are incorporated by reference into this Order.

The Court retains jurisdiction solely to enforce the terms of the attached Amended Agreement, in accordance with § 18. *See Floyd v. Ortiz*, 300 F.3d 1223, n. 3 (10th Cir. 2002) (citing *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994)); and *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994).


Dated:    January 28, 2025

R. Brooke Jackson
United States District Judge

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

## RELEASE AND AMENDED SETTLEMENT AGREEMENT

This Release and Amended Settlement Agreement (the "Amended Agreement") is made as of the date set forth in Paragraph 39 by and between THE CENTER FOR LEGAL ADVOCACY d/b/a DISABILITY LAW COLORADO (the "Plaintiff"), the STATE OF COLORADO, and the Office of Risk Management for the State of Colorado (collectively, the "State").

WHEREAS, Plaintiff filed a civil lawsuit entitled *The Center for Legal Advocacy d/b/a Disability Law Colorado v. Colorado Department of Corrections,* Civil Action No. 21-CV-07792 (D. Colo.) (the "Litigation"), alleging that the Colorado Department of Corrections ("CDOC") failed to abide by Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, with respect to the accommodations it provides to Deaf and hard of hearing individuals in its custody (the "Allegations"); and

WHEREAS, the Parties came to an agreement to settle the Litigation, and the Court entered an Order on August 15, 2022, incorporating that settlement ("Original Agreement") and retained jurisdiction to enforce the terms of the Original Agreement; and

WHEREAS, the Parties have met and conferred concerning Plaintiff's allegations of noncompliance with the Original Agreement and, on April 24, 2024, agreed in a Memorandum of Understanding to amend the Original Agreement so as to avoid the uncertainties and expense of litigation and to settle and compromise all claims that are or could be asserted in a motion to enforce the Original Agreement; and

WHEREAS, the Parties acknowledge that the promises and covenants contained herein are good and valuable consideration for all Parties to execute this Amended Agreement;

NOW, THEREFORE, in consideration of the foregoing premises, the Parties hereby agree and covenant as follows:

1. DEFINITIONS. The Parties agree that for purposes of this Amended Agreement the terms listed below shall be defined as follows:

   a. "ASL" means American Sign Language.

   b. "ASR" means automatic speech recognition, that is, the rendering of speech into text using machine automation. To be used in conjunction with this Amended Agreement, an ASR system must provide real-time text transcription that provides communication for DHOH people that is as effective as communication for hearing people.

   c. "CDOC" means the Colorado Department of Corrections, an agency of the State.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

    d.  "CHP" means Correctional Health Partners, a Colorado Limited Liability Corporation, and a non-party to the Litigation.

    e.  A person is "Deaf or Hard of Hearing" or "DHOH" when they are a person determined to have a hearing disability pursuant to the examination referred to in § 2(g) below or, while awaiting such examination, a person whose inability to hear is obvious and/or was previously known to CDOC.

    f.  "Exemplar Constituents" means the individuals identified as such in the Plaintiff's Second Amended Complaint who are currently incarcerated in the physical custody of CDOC facilities.

    g.  "Interpreter" means a qualified, certified sign language interpreter who meets the requirements of 28 C.F.R. § 35.104. As used in this Amended Agreement, it shall be understood to include a Certified Deaf Interpreter (as part of a Deaf/hearing team, where a Deaf person's ASL literacy is not sufficient to rely only on ASL) as well as an interpreter into a different sign language (for example, Mexican Sign Language or Black American Sign Language) where necessary.

    h.  "Major medical appointment" means:

        i.  audiology screenings and appointments;

        ii.  discussion of patient's symptoms for any diagnostic purpose, and discussing medical conditions, medications, and/or medical history;

        iii.  explaining medical conditions, treatment options, tests, medications, surgery, and other procedures;

        iv.  providing a diagnosis or recommendation for treatment;

        v.  communications immediately preceding, during, and immediately after surgery or other procedures and all post-op check ups;

        vi.  obtaining informed consent for treatment;

        vii.  mental or behavioral health appointments;

        viii.  providing instructions for medications, post-treatment activities, and follow-up treatments; and

        ix.  all appointments where new or complex information will be discussed.

        x.  The term "major medical appointments" does not include routine medical appointments, including blood pressure checks, medication refills, and dental cleanings.

        xi.  The term "major medical appointments" does not include emergency medical services.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

    i.   "Monitoring Team" shall have the meaning ascribed to it in Exhibit C.

    j.   "Neutral" shall have the meaning ascribed to it in Exhibit C.

    k.   "OCA" means Offender Care Aide, a job designation held by certain individuals in CDOC's custody assigned to assist disabled individuals with daily tasks and necessities.

    l.   "Policies" means Administrative Regulations, Clinical Standards, and any other memorialization of rules and procedures maintained by CDOC.

    m.   "Subject Matter Expert" shall have the meaning ascribed to it in Exhibit C.

    n.   "Trainer" shall have the meaning ascribed to it in Exhibit C.

    o.   "VRI" means video remote interpretation. As used in this Settlement, it is understood to mean the provision of sign language interpretation by remote video connection on demand, without the need for an advance request.

2.   AUDIOLOGICAL SCREENING AND REFERRAL FOR AUDIOLOGICAL EXAM. CDOC agrees to screen all individuals in its custody for hearing loss, audiological examination, and provision of hearing aids in accordance with the following terms.

    a.   All individuals over the age of 65 in CDOC's custody shall be screened for referral to an audiologist at least every three years.

    b.   All individuals in CDOC's custody with a comorbidity, or a history of hearing loss risk factors shall be screened for referral to an audiologist at least every two years.

    c.   All individuals in CDOC's custody may request screening for referral to an audiologist at any time, regardless of their last screening date.

    d.   When CDOC screens individuals in its custody for referral to an audiologist, it shall utilize an otoacoustic emissions test applying the DPOAE DP 4s Screening protocol on the MAICO Ero-Scan® OAE Test System maintained by CDOC.

    e.   When the result of the screening procedure specified in subparagraph (d) indicates referral to an audiologist with respect to the reading in at least one ear, CDOC shall submit a request for a referral for examination by an audiologist on behalf of the screened individual within two business days of such screening. Both ears must be tested for referral to an audiologist, regardless of whether the first ear tested produces a "pass" result.

        i.   CDOC shall revise the current Clinical Health Standards to provide that when the result of the screening procedure indicates a referral to

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

an audiologist, a provider shall submit a request for a referral for examination by an audiologist within two business days of the screening.

f.  CDOC shall submit a request for a referral for examination by an audiologist:

    i.  annually for individuals who have hearing aids; and

    ii.  within six months of provision of hearing aids to an individual who is being prescribed hearing aids for the first time.

g.  When an individual in CDOC's custody is examined by an audiologist pursuant to § 2(f), CDOC will ask the audiologist to determine whether the individual has a hearing disability and/or requires hearing aids by applying community standards of care.

    i.  The current hearing aid provision criteria in CDOC's "Clinical Standards and Procedures, Health Care Appliances" will be removed and instead state that an audiologist will make the determination as to whether the incarcerated person has a hearing disability and/or needs hearing aids, applying community standards of care. CDOC will notify all contracted audiologists of this policy change.

h.  When an audiologist makes a determination pursuant to § 2(g), CDOC shall adopt the determination of the audiologist as to whether the examined individual has a hearing disability and/or requires hearing aids. For purposes of this Amended Agreement, an individual in CDOC's custody requires hearing aids when an audiologist has determined that the individual requires hearing aids by applying community standards of care pursuant to § 2(g), and reported that determination to CDOC.

i.  When a CDOC health care provider determines that a DHOH individual has a need for repair, calibration, or replacement of one or more hearing aids:

    i.  CDOC will request approval from its third-party administrator, CHP, for repair, calibration, or replacement, and send the hearing aid(s) for such repair, calibration, or replacement within five business days after approval; and

    ii.  CDOC will provide loaner hearing aids at no cost to the individual while their hearing aids are repaired, calibrated, or replaced. Loaner hearing aids will be provided within one business day of an individual submitting a kite identifying the need for the repair, calibration, or replacement of one or more hearing aids.

        1.  CDOC shall revise its Clinical Health Standards to provide that incarcerated individuals will be provided loaner hearing aids while their hearing aids are repaired, calibrated, or replaced, and

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

incarcerated individuals will not be charged for the loaner
hearing aids.

    j.  CDOC shall have an adequate supply of loaner hearing aids at med lines of
all facilities where DHOH individuals are housed.

    k.  CDOC shall revise any other of its policies as necessary to include and
conform to the requirements of § 2.

3.    PROVISION OF HEARING AIDS. CDOC agrees to provide hearing aids to
individuals in its custody in accordance with the following terms.

    a.  CDOC shall provide hearing aids to all individuals in its custody who
require hearing aids, regardless of whether CDOC has previously provided
those individuals with hearing aids, unless CDOC can demonstrate that an
individual in its custody has previously lost or damaged their CDOC-issued
hearing aids on at least two prior occasions.

    b.  CDOC shall permit individuals in its custody who require hearing aids to
possess a remote-control associated with their hearing aids.

    c.  CDOC shall permit individuals in its custody who require hearing aids to
exchange depleted hearing aid batteries for new ones (at no cost to the
individual) during med line, which occurs twice daily. If an individual who
requires hearing aids needs to replace a battery at another time, they may
request a replacement from CDOC staff members assigned to their housing
unit, who will provide a replacement as soon as possible.

        i.  CDOC will make good faith efforts to ensure that batteries for all
types of hearing aids in use by individuals housed at a given facility
are stocked and available at all times.

        ii.  CDOC shall revise its Clinical Health Standards to provide that
individuals in CDOC's custody who require hearing aids may
exchange batteries during med line or from housing unit staff at the
facility.

    d.  CDOC shall revise any other of its policies as necessary to include and
conform to the requirements of §§ 3(a) – (c).

4.    ACCOMODATIONS AND AUXILIARY AIDS. CDOC agrees to evaluate
individuals in its custody for accommodations and auxiliary aids in accordance
with the following terms:

    a.  When an individual in CDOC's custody is determined to have a hearing
disability pursuant to § 2(g) of this Amended Agreement, they will be
assessed by a qualified professional to determine the auxiliary aids and
services reasonably necessary to ensure equally effective communication
and access to services (the "Assessment").

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

      i.  CDOC shall revise its policies to provide that individuals in CDOC's custody who are determined to have a hearing disability by an audiologist will be assessed by a qualified professional to determine the auxiliary aids and services reasonably necessary to ensure equally effective communication and access to services.

b.  When CDOC implements new technology relating to communication with or by incarcerated individuals, CDOC shall consult with the Monitoring Team, who will evaluate such technology and provide recommendations to ensure DHOH people have equal access to it.

c.  CDOC will approve and provide the auxiliary aids and services recommended in the Assessment in accordance with its duties and obligations under 28 CFR §§ 35.160-164.

      i.  CDOC shall revise its policies to provide that individuals in CDOC's custody who are determined to have a hearing disability will be provided the auxiliary aids and services recommended by a qualified professional in the Assessment.

d.  When new accommodations are approved pursuant to § 4(c), CDOC shall provide the individual for whom those accommodations were approved with a printed copy of their Accommodation Tracking System (ATS) report listing all of their approved accommodations, and that individual shall be permitted to carry the report on their person.

e.  For DHOH individuals, the following accommodations and auxiliary aids are presumed not to require a fundamental alteration in the nature of a service, program, or activity or an undue financial and administrative burden pursuant to 28 CFR § 35.164:

      i.  Hearing aids, batteries, and remote controls;

      ii.  Interpreters;

      iii.  ASR;

      iv.  Vibrating watches;

      v.  Armband alarms;

      vi.  Captioned telephones;

      vii.  Assistive listening systems, as defined in § 10; and

      viii.  Videophones.

f.  Once an accommodation or auxiliary aid or service is approved pursuant to an Assessment, that status will not change as a result of an individual's transfer to another housing assignment at the same or lower custody level, and such accommodations or auxiliary aids or services will not be revoked

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

except pursuant to a later Assessment, provided that CDOC may temporarily revoke such accommodations or auxiliary aids or services pending an Assessment if they pose a threat to safety or security.

g.  When an incarcerated person is transferred to a housing assignment with a higher custody level, a new Assessment shall be conducted to determine which auxiliary aids or services are reasonably necessary to ensure equally effective communication and access to services consistent with the individual's new housing assignment. If any individual who has been transferred in the year prior to the Effective Date of this Agreement and has not received a new Assessment upon their transfer, the individual(s) will receive a new Assessment.

h.  Nothing in this Amended Agreement precludes an individual incarcerated person from requesting a specific accommodation pursuant to the CDOC's accommodation request process.

i.  CDOC shall revise any other of its policies as necessary to include and conform to the requirements of §§ 4.

5.  INTERPRETER AND ASR SERVICES. CDOC agrees to provide interpretation and ASR services to DHOH individuals in accordance with the following terms.

a.  CDOC shall provide an Interpreter or ASR as appropriate based on the person's primary language and any determination made pursuant to § 4(c), when individuals in its custody previously determined to have a hearing disability pursuant to § 2(g) of this Amended Agreement request such services for any of the following activities:

    i.  Intake and orientation;

    ii.  Major medical appointments;

    iii.  Educational courses during class time;

    iv.  Religious programming;

    v.  Case manager meetings;

    vi.  Disciplinary investigations and hearings;

    vii.  PREA complaints and investigations;

    viii.  Classification/re-classification hearings;

    ix.  Parole board hearings; and

    x.  Substantive meetings relating to vocational and residential programming, including, for example, a meeting in which information is exchanged that can affect the DHOH incarcerated person's ability

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

to participate in the program in question.

b.  Where necessary based on ASL literacy, country of origin, or other relevant factors, CDOC will provide a Certified Deaf Interpreter, Black American Sign Language interpreter, or interpreter in other sign languages.

c.  Where necessary based on timing of hearing loss and ASL literacy, CDOC will provide ASR.

d.  When CDOC has two or more days of advance notice that interpreter services are required for any activity listed in § 5(a), it shall provide an on-site interpreter during that activity, except when on-site interpretation would materially interfere with security or infection control measures or if an on-site interpreter is not available. In such cases, CDOC shall provide VRI in lieu of on-site interpretation.

   i.   When on-site interpreters are required pursuant to § 5(d), CDOC will send interpreter requests to all interpreter service vendors with which CDOC contracts.

   ii.  If CDOC secures an interpreter that later cancels, CDOC will make reasonable efforts to secure another on-site interpreter. CDOC will provide documentation of its efforts to obtain an on-site interpreter, as well as any interpreter cancellations, to the Monitoring Team.

   iii. CDOC shall revise its policies to provide that it will provide in-person interpreters for individuals who use sign language for the activities listed in § 5(a) upon request with two or more days' notice, unless one of the exceptions provided in § 5(d) applies.

e.  When CDOC has less than two days of advanced notice that interpreter services are required for any activity listed in § 5(a), it shall provide an on-site interpreter or VRI during that activity.

f.  CDOC will evaluate requests for Interpreters or ASR for other types of interaction, including but not limited to routine meetings related to vocational and residential programming, grievance preparation, library services, and interpretation of complex written materials. CDOC will evaluate such requests on a person-by-person and/or case-by-case basis, and approve them when the incarcerated person demonstrates that the accommodation is necessary for them to access the full benefits of CDOC's services and programs. Where a person has demonstrated that a specific type of accommodation is necessary in a specific context to access the full benefits of CDOC's services and programs, they will be entitled to this accommodation in this context going forward, and will not have to reestablish the necessity for each request. They may be required to provide notice to CDOC of the need for the accommodation in a new context.

g.  CDOC shall revise any other of its policies as necessary to include and

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

conform to the requirements of § 5.

6.   ADAPTIVE TECHNOLOGY.

    a.   CDOC shall provide the following communications technologies at all facilities where individuals determined to have hearing disabilities pursuant to § 2(g) of this Amended Agreement are housed:

        i.   VRI; and

        ii.   ASR services.

    b.   All VRI services provided by CDOC shall meet the standards set forth at 28 C.F.R. § 35.160(d).

    c.   CDOC shall furnish sufficient equipment in at least one clinical room, one case management office, and one other location in each building housing DHOH individuals such that the technologies identified in § 6(a) are promptly available and readily accessible during:

        i.   All medical encounters, including unscheduled, minor, or emergency medical encounters;

        ii.   Case management interactions;

        iii.   Investigations of potential COPD violations and other disciplinary matters; and

        iv.   Other unscheduled interactions between staff and individuals determined to have hearing disabilities pursuant to § 2(g) of this Amended Agreement.

        v.   This section will not apply during a use of force until facility staff have completed any necessary anatomical evaluations and deemed the situation safe and secure.

        vi.   CDOC shall have the technological capability, through its vendors, to engage in on-demand video interpretation, as considered by §§ 5(e) and 6(c)(iv).

    d.   CDOC is not required to provide VRI or ASR services while staff are in the process of moving an individual from one part of the facility to another. If an individual is being moved in order to facilitate communication for an unscheduled interaction as described in § 6(c)(iv), the individual will be first moved to a location where VRI or ASR can be provided.

        i.   CDOC shall revise its policies to provide that for unscheduled interactions between staff and individuals who have a hearing disability, the individuals will be first moved to a location where VRI or ASR can be provided.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

e.  CDOC shall provide training to both medical and non-medical staff on how and when to utilize the communications technologies listed in § 6(a).

f.  CDOC shall revise any other of its policies as necessary to include and conform to the requirements of §§ 6(a)-(e).

g.  CDOC shall provide at least one operating captioned telephone in each living unit in which one or more individuals determined to have hearing disabilities pursuant to § 2(g) of this Amended Agreement is housed.

   i.  In order to implement this provision, if a unit housing one or more individuals determined to have hearing disabilities pursuant to § 2(g) does not currently have a captioned telephone, CDOC will work with one such individual to complete the necessary documents to submit to the Federal Communications Commission ("FCC") in order to obtain a captioned telephone in that particular unit. Within 5 business days of identification of such person, CDOC will provide the necessary documentation to such person, and CDOC will submit the necessary documentation to the FCC within 3-5 business days of the completion of the documentation.

   ii.  The Parties understand that applicable FCC regulations prohibit CDOC from installing captioned telephones in units where there are no individuals who use a captioned telephone in that unit.

h.  CDOC shall provide closed captioning of all video content presented at CDOC facilities, including intake and orientation videos, educational videos, and CDOC-generated content.

i.  CDOC shall revise its policies as necessary to include and conform to the requirements of §§ 6(g)-(h).

j.  CDOC shall implement MMCall or substantially similar technology (including similar length and intensity of vibration upon receipt of a notification) to provide text-based notifications of auditory announcements.

   i.  Text-based notifications of auditory announcements will be provided to individuals who meet certain eligibility criteria through a two-step process.

      1.  First, as an initial screening, individuals will automatically qualify for this technology if, based on the most recent available medical records, they have a present diagnosis by an audiologist of a:

         a.  "severe" or greater level of hearing loss. This will be defined as an average hearing loss of 71 dBHL or greater at the frequencies of 500 Hz, 1000 Hz, and 2000 Hz in the better ear.

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

OR

    b. PB Max score of 60% or below in the better ear on a recorded presentation of a phonemically or phonetically balanced monosyllabic word recognition test.

2. Second, if an individual wears hearing aids and does not meet either initial screening criteria in § 6(j)(1) of this Amended Agreement, that individual will receive a QuickSIN test. The QuickSIN will be administered in a sound field while the individual is wearing their hearing aids at their typical use settings. If the individual receives a score of 12 or higher on the QuickSIN test, then they will qualify for the technology described in § 6(j) of this Amended Agreement.

3. In order to implement the provisions of § 6(j) of this Amended Agreement, CDOC will offer a one-time screening opportunity for text-based notification eligibility once such technology is available. CDOC will screen DHOH individuals upon intake to determine eligibility for text-based notification.

    a. CDOC shall revise its policies to provide that screening for text-based notification eligibility will be conducted upon intake by (a) reviewing medical records of individuals who enter CDOC custody to determine eligibility for MMCall and (b) administering a QuickSIN test to individuals with hearing aids who enter CDOC custody.

4. Individuals who do not meet the two-part test above may request text-based notifications through the ordinary accommodations request process, which request will be considered on a case-by-case basis.

ii. Individuals who qualify for text-based notifications must elect to receive either text-based notifications, or face-to-face notifications of announcements from an OCA.

iii. CDOC shall install transmitters at all facilities where an individual is approved for text-based notifications.

iv. CDOC shall transmit all announcements that would otherwise be conveyed over the public address system to qualifying individuals via the text-based notification system, including but not limited to:

1. General announcements such as mealtimes, med lines, and lockdowns; and

2. Individual or irregular announcements, such as instructions for an individual to report to a particular location within a facility.

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

     v.  CDOC shall provide a receiver to individuals who qualify for text-based notifications at no cost to the individual, except where CDOC can demonstrate that the individual has lost or destroyed the receiver on at least two prior occasions. In such cases, CDOC may charge the qualifying individual for a replacement receiver.

     vi.  CDOC shall revise its policies to include and conform to the requirements of § 6(j).

k.  CDOC will provide individuals determined to qualify for text-based notifications with a free vibrating watch upon request, except where CDOC can demonstrate that the individual has lost or destroyed the vibrating watch on at least two prior occasions. In such cases, CDOC may charge the qualifying individual for a replacement vibrating watch. To be used in conjunction with this Amended Agreement, a vibrating watch must be able to permit the user to set at least three alarms and must be able to wake the average person from deep sleep. Nothing in this paragraph shall prevent a DHOH prisoner from purchasing a vibrating watch through the canteen system. CDOC will ensure that vibrating watches are available through the canteen system.

     i.  CDOC shall revise its policies to include and conform to the requirements of § 6(k).

l.  CDOC shall revise any other of its policies as necessary to include and conform to the rest of the requirements of § 6.

7.  EMERGENCY NOTIFICATION SYSTEM. CDOC will ensure that DHOH incarcerated people receive notice of emergencies at the same time as all other incarcerated people in their living unit. To do this, CDOC will:

a.  Send a notice through the notification system referenced in § 6(j) whenever the existing emergency notification system is used;

b.  Ensure that there are strobes in day halls in all facilities Level 3 and higher, and in all dorm rooms in Level 1 and 2 facilities;

c.  Ensure that all DHOH incarcerated people who meet the qualifications for text-based notifications in § 6(j)(i) have the opportunity to be housed in a cell that either has a strobe or is within line of sight to a strobe;

d.  Ensure that staff evacuate DHOH incarcerated people who meet the qualifications for text-based notifications in § 6(j)(i) when the emergency notification system is used in an active emergency or during a drill where other incarcerated people are evacuating, including checking cells and other locations to ensure that no such person is left behind;

e.  Staff will otherwise notify these individuals if the emergency notification system is being used for a drill or non-emergency situation in which other

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

incarcerated people are not evacuating; and

f.  Continue to evaluate other technologies capable of individually notifying DHOH incarcerated people who meet the qualifications for text-based notifications in § 6(j)(i) when the emergency notification system is used.

g.  CDOC shall revise its policies to include and conform to the requirements of § 7.

8.  CLEAR FACE MASKS. Whenever protective masks are worn by CDOC personnel, such personnel shall use clear face masks during communications with DHOH individuals.

a.  CDOC shall have an adequate supply of clear face masks at each facility.

b.  CDOC shall revise its policies to include and conform to the requirement of § 8.

9.  USE OF RESTRAINTS. CDOC agrees to modify the manner in which it uses restraint on DHOH individuals in its custody in accordance with the following terms:

a.  Within the facility/on-site escort:

i.  When an individual uses sign language to communicate, CDOC shall refrain from handcuffing the individual behind their back, except in an emergency or when the individual poses a risk to himself or others, including CDOC staff.

ii.  When an individual is unable to communicate verbally and must communicate using handwriting, CDOC shall refrain from handcuffing the individual behind their back, except in an emergency or when the individual poses a risk to himself or others, including CDOC staff.

iii.  In general, when an individual uses sign language to communicate or is unable to communicate verbally and must communicate using handwriting, CDOC will refrain from using black box restraints on individuals, except in an emergency or when the individual poses a risk to himself or others, including CDOC staff.

iv.  This special black box use and cuffing requirement will be noted as an accommodation on the record of individuals for whom this applies so that staff are aware of this obligation. This accommodation will be removed should an individual assault staff or others while cuffed in front. If the accommodation has been removed, individuals can request the accommodation to be reapplied and CDOC will review the request on a case by case basis.

v.  Within ten business days of the Effective Date, this accommodation

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

will be noted in the record of all individuals for whom this applies that
are currently in CDOC custody.

b.  During transport/off-site:

i.  Notwithstanding § 9(a)(iii) above, CDOC may use black box
restraints during transport and while moving individuals from their
locations in the facility to the transport vehicles in order to prepare the
individuals for transport.

ii.  Black box restraints must be removed upon arrival at the off-site
location so that an individual who use sign language to communicate
or who are unable to communicate verbally and must communicate
using handwriting, may communicate with external providers. Black
box restraints may be placed on the individual once the reason for the
off-site visit has concluded and the individual is to be returned to the
transport vehicle.

iii.  CDOC may continue to use black box restraints upon arrival at the
off-site location where an individualized assessment determines that a
failure to do so would create unacceptable safety risks, including risks
to CDOC staff, or during an emergent security situation.

iv.  This special black box use and cuffing requirement will be noted as an
accommodation on the record of individuals for whom this applies so
that staff are aware of this obligation. This accommodation will be
removed should an individual assault staff or others while utilizing
this special black box and cuffing accommodation. If the
accommodation has been removed, individuals can request the
accommodation to be reapplied and CDOC will review the request on
a case by case basis.

v.  Within ten business days of the Effective Date, this accommodation
will be noted in the record of all individuals for whom this applies that
are currently in CDOC custody.

c.  If CDOC removes a cuffing accommodation, it will report such removal to
the Monitoring Team.

d.  CDOC agrees to revise its policies regarding the use of restraints on
individuals determined to have hearing disabilities pursuant to § 2(g) of this
Amended Agreement in accordance with the provisions listed in §9.

10. ASSISTIVE LISTENING SYSTEMS. CDOC shall provide to DHOH
incarcerated people, as an accommodation upon request and when appropriate,
an assistive listening system for use during group interactions that include
individuals determined to have hearing disabilities pursuant to § 2(g) of this
Amended Agreement. To be used in conjunction with this Amended
Agreement, an assistive listening system must ensure that the average hard of

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

hearing person(s) using the system, including but not limited to those who use hearing aids, can effectively and simultaneously understand the words spoken by the hearing person(s). CDOC will ensure that it provides enough assistive listening systems so that more than one DHOH person can simultaneously participate in the same program. CDOC shall revise its policies to include and conform to these requirements.

11. INFORMATIONAL MATERIALS FOR INDIVIDUALS WITH HEARING DISABILITIES.

    a.   An informational document for individuals with hearing disabilities, drafted by the Parties, is attached to this document as Exhibit A. Following retention of the Monitoring Team, the Parties will ask the Neutral and Subject Matter Expert to review Exhibit A and propose changes that will make it more informative to DHOH individuals. Promptly after final approval by the Parties, CDOC shall distribute Exhibit A to all its employees and facilities upon final agreement by the Parties.

    b.   CDOC shall make Exhibit A available at no charge:

        i.   to all individuals in its custody within 30 days of the Effective Date of this Amended Agreement;

        ii.   to all individuals in its custody upon request;

        iii.   to all individuals in its custody during the intake process;

        iv.   to all individuals determined to have hearing disabilities pursuant to § 2(g) of this Amended Agreement annually.

    c.   CDOC shall create an ASL version of Exhibit A and make it available during staffing meetings with individuals for whom ASL is their primary language, monthly on day hall televisions in day halls where such individuals are housed, upon intake and orientation, and upon request. The ASL version of Exhibit A shall be a video of a Deaf interpreter or other skilled Deaf presenter conveying the information in Exhibit A in ASL.

    d.   A poster containing essential information from Exhibit A is attached as Exhibit B hereto. Following retention of the Monitoring Team, the Parties will ask the Neutral and Subject Matter Expert to review Exhibit B and propose changes that will make it more informative to DHOH individuals. CDOC shall create a version of Exhibit B enlarged to approximately 24 by 36 inches and post it in areas where information is made available to prisoners.

12. CHANGES TO CDOC POLICY. If CDOC believes it is necessary to alter or amend any of the policies controlled by this Amended Agreement in a manner that is inconsistent with its terms, it shall meet and confer with Plaintiff before making any such changes. Notwithstanding such conferral, the terms of this

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

Amended Agreement shall continue to bind the Parties unless and until the
Amended Agreement is amended in writing and signed by the Parties.

13. TRAINING.

    a.  CDOC will implement such training as is necessary to comply with this
Amended Agreement and comply with the training requirements of Exhibit
C.

    b.  The Parties agree that they will jointly select a Trainer who will:

        i.  Review CDOC's current training materials and processes that relate to
communication with and/or accommodations for DHOH prisoners;
and

        ii.  Assist CDOC in developing new training materials in accordance with
the Monitoring and Training Plan (Exhibit C), such as adding to,
amending, and/or updating and consulting on implementation of
CDOC's training materials and processes.

    c.  CDOC will implement changes or updates to its training program proposed
by the Trainer as necessary to comply with § 13(a).

        i.  CDOC personnel will meet with the Trainer to discuss the Trainer's
suggested changes to CDOC's training material and processes on at
least one occasion.

        ii.  CDOC will issue updated training materials pertaining to the
provisions in the Amended agreement.

        iii.  CDOC personnel will record and distribute one or more videos to be
played at roll call pertaining to the provisions in this Amended
Agreement.

        iv.  Should CDOC dispute a portion or portions of the Trainer's proposed
changes or updates to the training program, CDOC will confer with
the Trainer regarding the dispute.

        v.  Should Plaintiff dispute CDOC's implementations of proposed
updates or changes to CDOC's training program or CDOC's refusal to
implement changes proposed by the Trainer, Plaintiff may do so
subject to the dispute resolution process in §§ 17 and 18 below.

14. MONITORING AND REPORTING.

    a.  The Parties agree that they will jointly select a Monitoring Team who will
monitor and assist with monitoring CDOC's ongoing compliance with the
Amended Agreement in accordance with Exhibit C. The State of Colorado
shall then retain the Neutral, Subject Matter Expert, and Administrative
Staff.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

b.  The Monitoring Team will issue reports in accordance with the Monitoring and Training Plan.

c.  Beginning with the Effective Date through the end of the Term, the Monitoring Team will also:

i.  recommend to CDOC Assistive Technology and other measures to implement this Amended Agreement;

ii.  recommend to CDOC Reasonable Modifications and Auxiliary Aids and Services programs and facilities accessible to DHOH incarcerated people to implement this Amended Agreement;

iii.  report annually and provide recommendations on any newly-available assistive technology and improvements to existing assistive technology that it recommends CDOC adopt to implement this Amended Agreement; and

iv.  evaluate DHOH incarcerated people to assess appropriate assistive technology, auxiliary aids and services, and other reasonable modifications, and training in the same to implement this Amended Agreement.

d.  CDOC will provide documents and information to the Monitoring Team in accordance with the Monitoring and Training Plan.

e.  Upon request, Plaintiff's counsel shall be entitled to receive all documents and information provided to the Monitoring Team in accordance with § IV.C of the Monitoring and Training Plan.

f.  The Parties will meet jointly with the Monitoring Team at the dates of 30 days, 60 days, and 90 days after execution of this Amended Agreement ("Milestone check-in meetings"). After the last Milestone check-in meeting, the Parties and the Monitoring Team will meet in accordance with the schedule outlined in the Monitoring and Training Plan.

g.  The Office of Risk Management for the State of Colorado will pay all fees and costs associated with the Monitoring and Training Plan, up to an amount agreed by the parties and approved by the Risk Manager. The parties will meet and confer once after the first 90 days following the Effective Date and from time to time thereafter to review the Monitoring Team's expenditures under this budget.

15. COMPLIANCE.

a.  The Monitoring Team shall determine whether CDOC has reached certified compliance, as anticipated by Exhibit C, based upon the provisions of this Amended Agreement.

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

> i. A determination of certified compliance, pursuant to § 15(a), shall be based upon CDOC's compliance with the terms of this Amended Agreement for individuals covered by the provisions of this Amended Agreement as of 90 days following the Effective Date.

> b. The Parties acknowledge that isolated incidents in which CDOC personnel fail to comply with the provisions in this Amended Agreement, which are not a part of a pattern of similar occurrences shall not, by itself, prevent the Monitoring Team from certifying CDOC's compliance or deem CDOC out of compliance with the Amended Agreement. CDOC will take appropriate measures to address any isolated incidents and implement strategies to prevent any future occurrences.

## 16. STAFFING AND BUDGET CONTINGENCIES

> a. CDOC represents that $501,000 was appropriated to CDOC for the ADA Operating Line item for Fiscal Year 2024-2025, and the Parties anticipate that these funds will be sufficient to comply with this Amended Agreement during Fiscal Year 2024-2025. CDOC further represents that all available funds for FY 2024-2025 for this Amended Agreement will be used, and CDOC has already begun using funding toward this Amended Agreement.

> b. Contingent on Funding: The State is prohibited by law from making commitments beyond the term of the current State Fiscal Year (defined as a 12-month period beginning on July 1 of each calendar year and ending on June 30 of the following calendar year). With the exception of provisions regarding the appointment and retention of the Monitoring Team and attorneys' fees and costs, all promises and covenants in this Amended Agreement are contingent, subject to the negotiation provisions outlined in §16(c)(ii), on annual legislative budgetary approval of the funds necessary for CDOC to implement the promises and covenants in this Amended Agreement.

> c. Budget Requests: CDOC will make appropriate legislative funding requests for the injunctive relief annually, beginning with the 2025-26 budget submission, and every year thereafter. CDOC's annual requests for funding to implement this Amended Agreement shall be included as part of the current lines of funding, consistent with CDOC's standard budgeting process. CDOC will work in good faith to obtain annual legislative approval of budget items necessary to fund this Amended Agreement.

> > i. If an annual budget request is not approved or is reduced by the General Assembly in a way that will materially impact CDOC's ability to implement or maintain all or any part of the terms specified herein, CDOC will make good faith efforts to comply with the terms of the Amended Agreement to the extent it is able to do so within the confines of the reduced funding.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

    ii.   Promptly after CDOC has reason to believe the allotted budget will not be enough to comply with the Amended Agreement, or within 21 days of the date on which CDOC's budget is codified into legislation by the General Assembly, CDOC will notify Plaintiff's counsel if any budget request is denied or reduced in a way that will impact CDOC's ability to implement or maintain any part of any term specified herein. In its notification, CDOC will describe to Plaintiff's counsel both the measures required by this Amended Agreement that the budget shortfall would prevent it, in whole or in part, from implementing and the actions it will take to ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity pursuant to this Amended Agreement. The Parties will work cooperatively in an attempt to create a mutually agreed resolution and consult the Monitoring Team where appropriate. If, after 14 days from notification required by this paragraph, the Parties do not reach a resolution, the Parties may invoke the dispute resolution processes in §§ 17-18. In the event that CDOC has any budget requests to the General Assembly that are not approved or reduced, and that non-approval or reduction materially impacts its ability to maintain any part of the terms herein, CDOC will make good faith efforts to continue to implement the terms of this Amended Agreement and will continue to pursue funding from the General Assembly until such funding is provided.

    d.   CDOC shall not be entitled to use § 16 as a defense to any individual denial or failure to provide accommodations or auxiliary aids and services required by this Amended Agreement.

    e.   <u>Budget Shortfall is Not Evidence of Bad Faith</u>: The Parties expressly recognize that CDOC's inability to achieve certified compliance with the terms of this Amended Agreement, or to comply with its terms during the pendency of the Amended Agreement, is not by itself evidence of bad faith conduct by CDOC, if CDOC is experiencing a staffing shortage or budgetary issues and is working in good faith to remedy the same.

    f.   If CDOC does not obtain adequate funding to fully implement one or more portions of this Amended Agreement, after completing the steps in § 16(c)(ii) the Parties are unable to come to a resolution, Plaintiff has the option to declare such portions of the Amended Agreement out of compliance. CDOC will continue to implement the balance of this Amended Agreement as well as applicable federal and state anti-discrimination laws. During all periods of declared non-compliance, Plaintiff will not be bound by the Release related to such portions and any defenses the State or any related parties, including those previously dismissed, have or may have had related to the portions declared non-compliant shall be deemed revived and available.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

g.  Plaintiff may invoke the dispute resolution process pursuant to the terms in §§ 17 and 18.

17. **INFORMAL DISPUTE RESOLUTION.**

a.  Any time after the Effective Date up until the end of the term of this Amended Agreement, if either party believes that a dispute exists relating to the performance or interpretation of this Amended Agreement, it shall notify the other party in writing that it is invoking this dispute resolution process.  Its notice shall describe the dispute in sufficient detail to enable the other party to conduct a meaningful investigation of the alleged dispute.

b.  The other party shall respond in writing to such notice within fourteen (14) days of receipt of the notice.

c.  Counsel for the Parties shall meet and confer regarding the dispute by telephone or in person within fourteen (14) days of the transmittal of the response described in § 17(b), either in person or telephonically, to attempt to resolve the issue informally.

d.  The complained of party shall have a period of time to remedy the alleged noncompliance ("cure period"). Each cure period will start from the date the complaining party services the notice required by § 17(a) as follows:

   i.  If Plaintiff alleges that CDOC has failed to comply with this Amended Agreement in providing the following accommodations or auxiliary aids and services required by this Amended Agreement to an individual prisoner, the cure period will be fourteen (14) days or earlier if necessary to ensure that a DHOH prisoner is not denied access to CDOC services and programming:

      1.  Hearing aid batteries, hearing aid remote controls, and loaner hearing aids;

      2.  Vibrating watches;

      3.  Armband alarms; and

      4.  Interpreter or ASR services for case manager meetings, substantive meetings relating to vocational and residential programming, or educational courses during class time if the prisoner is already enrolled in a specific class.

   ii.  For all other alleged failures to comply with this Amended Agreement, the complained of party will have a cure period of sixty (60) days.

e.  If, following the appropriate cure period, the Parties are unable to resolve the dispute, either Party may submit the dispute to the Neutral who will

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

issue a written decision on the dispute. The written decision shall include a brief summary of the issue, a finding that the complained of party is or is not in compliance with this Amended Agreement, a brief explanation for the finding, and a recommendation for a reasonable remedy addressing any finding of non-compliance.

    f.   If the Parties are unable to resolve the dispute through the process described in § 17, then either party may submit the dispute for judicial resolution in accordance with the terms of § 18.

18. JUDICIAL DISPUTE RESOLUTION.

    a.   If after completing the informal dispute resolution process in § 17 of this Amended Agreement, either party believes that the other party remains in breach of the terms of this Amended Agreement, that party may submit the dispute for resolution by the Court.

    b.   In resolving the dispute, the Court will apply Title II of the Americans with Disabilities Act (42 U.S.C. § 12131), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794).

    c.   The Parties agree that the United States District Court for the District of Colorado shall retain continuing jurisdiction over any attempt to enforce this Settlement Amended Agreement by either of the Parties.

    d.   The Parties may move the U.S. District Court to enforce the Amended Agreement, subject to the terms of §§ 17-18 of this Amended Agreement.

    e.   The prevailing party in any court proceeding shall be entitled to its attorneys' fees and costs incurred in preparing and litigating its enforcement action before the Court pursuant to 42 U.S.C. § 12205 and the cases interpreting that provision including the fee-shifting standards in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978). The prevailing party will not be entitled to any attorney fees incurred prior to invoking the informal dispute resolution process in § 17.

19. TERM. The term of this Amended Agreement shall be 18 months from the date of CDOC's certified compliance with the terms of this Amended Agreement, as documented and confirmed by the Neutral pursuant to § 15, provided that the dispute resolution mechanism in §§ 17-18 remains in force through the resolution of any disputes pending at the end of the term.

20. NOTICE TO PARTIES. All notices required or permitted hereunder shall be in writing and shall be served on the Parties at the email addresses set forth below.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

| | |
|---|---|
| To Defendants | Phil Barrett<br>philip.barrett@coag.gov |
| | Rachel Lieb<br>Rachel.lieb@coag.gov |
| To Plaintiffs | Amy Robertson<br>arob@foxrob.com |
| | Laura Rovner<br>lrovner@du.edu |
| | Nicole B. Godfrey<br>nicole.godfrey@du.edu |
| | Miriam Kerler<br>mkerler@du.edu |
| | Nicholas Lutz<br>nlutz@du.edu |
| | Meghan Baker<br>mbaker@disabilitylawco.org |
| | Kassidy Roberts<br>kroberts@disabilitylaw.co.org |

21. FEES & COSTS. This Amended Agreement is contingent on execution of an agreement among the Parties addressing Plaintiff's claim for attorneys' fees incurred in connection with preparing for Judicial Enforcement of the Original Agreement.

22. RELEASE. Plaintiff, for itself and its heirs, successors, assigns, agents, and representatives, including legal representatives, hereby releases, acquits, and forever discharges the State of Colorado, the State's departments, agencies, and instrumentalities, and the State's current and former officers, employees, agents, and successors from any and all claims, demands, causes of action, and obligations, whether asserted or unasserted, whether matured, unmatured, or wholly inchoate, and whether known or unknown, including but not limited to all claims pursuant to Title II of the Americans with Disabilities Act (42 U.S.C. § 12131), and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) with respect to the Allegations concerning conduct occurring before or during the Term of this Amended Agreement.

23. STIPULATION TO DISMISS AND COVENANT NOT TO SUE.

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

    a.   The Parties agree to jointly file this Amended Agreement with the Court, with the Court retaining jurisdiction to enforce this Amended Agreement in the event of any disputes that may arise between the Parties until the Amended Agreement terminates.

    b.   Plaintiff expressly agrees and covenants that it will not sue or assert any cause of action, at law or equity, and whether before a court of law or an administrative agency, on its behalf, or on behalf of the Exemplar Constituents, against the State or any of the state's current or former officers, official, employees, departments, or agencies for any claims for damages or injunctive relief that Plaintiff has or may have in the future arising from the Allegations.

24. INTENDED THIRD PARTY BENEFICIARIES. The Parties agree and acknowledge that all agencies, officers and employees of the State, although they are not signatory Parties hereto, are intended third-party beneficiaries of this Release and Amended Agreement, and each and all of them shall have the right to rely upon and enforce this Release and Amended Agreement in any court of competent jurisdiction in the event that any action or proceeding based upon claims or causes of action released hereby may be threatened or commenced.

25. NO ADMISSION OF LIABILITY. This Amended Agreement is entered into for the purposes of avoiding litigation and does not constitute an admission of liability or evidence of any wrongdoing or omission of any kind. This Amended Agreement shall not be offered or received into evidence or otherwise filed or lodged in any proceeding against any party except as may be necessary to prove or enforce its terms.

26. PORTIONS OF SETTLEMENT PAYMENTS MAY BE WITHHELD. Pursuant to C.R.S. §24-30-202.4, the State Controller may offset the Settlement Payments by any debts owed by Plaintiff to State agencies under the vendor offset interception system for: (a) unpaid child support or child support arrearages; (b) unpaid balance of tax, accrued interest and other charges specified in Article 21, Title 39, C.R.S.; (c) unpaid loans due to the Student Loan Division of the Department of Higher Education; (d) owed amounts required to be paid to the Unemployment Compensation Fund; (e) medical bills incurred by Plaintiff paid in part or in full by Medicaid or Medicare; and (f) other unpaid debts owing to the State or any state agency thereof, the amount of which is found to be owing as a result of final agency determination or reduced to judgment as certified by the Controller. Any debts owed by Plaintiff shall solely be taken from his portion of the settlement.

27. INTERNAL REVENUE SERVICE W-9 FORMS. Plaintiff will provide fully executed and signed I.R.S. W-9 forms, or ITIN (Individual Taxpayer Identification Number) forms, to the State prior to payment of any amounts under this Release and Amended Agreement.

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

28. REPORTING AND TAX TREATMENT OF SETTLEMENT PAYMENT. It is expressly intended and understood that the Fees and Costs Payments represent recovery of Plaintiff's attorneys' fees and costs associated with preparing for Judicial Enforcement of the Original Agreement. Notwithstanding such intent and understanding, Plaintiff agrees that the State may file such tax forms and reports reflecting the Fees and Costs Payments that it deems necessary or appropriate, including but not limited to a Form 1099, with taxing authorities. In the event any part of the Settlement Payments is determined to be taxable, Plaintiff will be solely responsible for any tax liability arising therefrom related to their tax obligations, including any interest or penalty assessed. In the event that any claim is ever asserted against the State to satisfy a tax liability arising from Plaintiff's failure to pay any tax owed from them on the Settlement Payment, Plaintiff agrees to defend, indemnify, and hold the State harmless on such claim, including any interest or penalties, within thirty (30) days after notification from the State that a taxing authority has asserted a tax claim, or such longer period as specified by the taxing authority. Plaintiff agrees that neither the State of Colorado, any other state employee and/or agency, nor the Office of the Colorado Attorney General have made any representations or given any legal opinion concerning the tax treatment of the Fees and Costs Payments, and are expressly not relying on any such representation or opinion. Plaintiff has sought and received such tax opinions and advice as they deem necessary from attorneys and/or tax advisors of their choice.

29. OPEN RECORDS REQUIREMENTS. This Release and Amended Agreement is not confidential. Plaintiff understands and agrees that the State of Colorado and its agencies and departments are bound by applicable public disclosure laws including, without limitation, the provisions of C.R.S. §24-72-101, *et seq.* (Colorado Open Records Act), as presently or subsequently amended, and that the State of Colorado may be required to disclose this Release and Amended Agreement in its entirety if requested to do so under such statutes. Plaintiff understands that this Release and Amended Agreement are public records and further agrees that it will not hold the State of Colorado, or its administrators, officers, agents, or employees, liable for release of information contained in public records under such statutes.

30. WARRANTIES AND REPRESENTATIONS. Plaintiff represents and warrants that it has not assigned or transferred any claim arising from or related to the Incident to any third party and that no third party has been subrogated to their interest in claims purported to be released hereby, or, if any third party has been subrogated to Plaintiff's interest, the interest of any subrogee has been settled, compromised, and extinguished. Plaintiff agrees to defend and indemnify the State, its departments, agencies, officers, and employees, and to hold them harmless against the claims of any assignee or subrogee to claims purported to be released hereby that may hereafter be asserted.

31. INTEGRATION. This Release and Amended Agreement constitutes the entire agreement of the Parties regarding the subject matter hereof. The terms of this

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

Release and Amended Agreement are contractual in nature and not mere recitals. As such, the Parties understand, acknowledge and agree that this Release and Amended Agreement is fully integrated and supersedes all previous oral or written agreements of the Parties, including but not limited to the Original Settlement and the Memorandum of Understanding.

32. BINDING EFFECT.   This Release and Amended Agreement shall take effect to the benefit of, and be binding upon, the heirs, successors, assigns and legal representatives of the Parties and any third-party beneficiaries.

33. GOVERNING LAW. This Release and Amended Agreement is entered into in Colorado and shall be governed by the laws of the State of Colorado, except as provided in § 18.

34. HEADINGS. The headings used in this Release and Amended Agreement are for the convenience of the Parties only. As such, these headings shall not have any legal effect whatsoever or, in any other way alter or modify the meaning or interpretation of this Release and Amended Agreement.

35. SEVERABILITY.If any provision of this Release and Amended Agreement should be declared to be unenforceable, the remainder of this Release and Amended Agreement shall continue to be binding upon the Parties.

36. ADVICE OF COUNSEL. Plaintiff represents that (a) it has relied upon the advice of attorneys and/or other consultants of its own choice concerning the legal and federal, state and local tax consequences of this Release and Amended Agreement, (b) this Release and Amended Agreement has been thoroughly read by Plaintiff and its terms have been explained to its satisfaction by an attorney or attorneys of its choice, and (c) the terms of this Release and Amended Agreement, including its release of unasserted and unknown claims, are fully understood and voluntarily accepted by Plaintiff. Plaintiff further understands and agrees that this Release and Amended Agreement shall be forever binding and that no cancellation, rescission, or modification of, or release from the terms of, this Release and Amended Agreement shall be made based upon any mistake of fact or of law.

37. EXECUTION IN COUNTERPARTS. This Release and Amended Agreement may be executed in counterparts, each of which shall have full force and effect upon execution by all Parties to this Release and Amended Agreement, but which together shall constitute a single instrument.

38. The Colorado Special Provisions are attached to this Release and Amended Agreement. No changes are authorized to the Colorado Special Provisions.

39. EFFECTIVE DATE/CONTROLLER APPROVAL. This Release and Amended Agreement shall not be deemed valid until it is approved **and** signed by the State Controller or such assistant as he may designate, as provided by Section 24-30-202(1), C.R.S. (1988). This provision is applicable to any agreement providing for payment of money by the State of Colorado. The effective date of this Release and Amended Agreement is the date it is signed by the State Controller or his designee. No signature of the State Controller or his designee

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

shall be provided until after all other required signatures are affixed to this Agreement. Unless otherwise specified in this Amended Agreement, all obligations herein begin on this Effective Date and will cease with the Term as outlined in § 19.

[*The remainder of this page has intentionally been left blank.*]

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

FOR THE PLAINTIFF:

BY: _Andrew Romanoff_                    Date: 12/20/2024 | 5:28 PM MST
ANDREW ROMANOFF
Executive Director

FOR THE DEFENDANTS:

BY: _____           Date: 01/03/2025
MOSES ANDRE STANCIL
Executive Director

FOR THE COLORADO DEPARTMENT OF PERSONNEL &
ADMINISTRATION:

BY: _Tobin Follenweider_                 Date: 1/7/2025
KARA VEITCH (or designee)
Executive Director              Correction:
Tobin Follenweider              read "Tony
                                Gherardini"
Deputy Executive Director DPA   for "Kara
                                Veitch"

FOR THE STATE OF COLORADO:

BY: _Nathan Manley_                      Date: 1/13/2025
ROBERT JAROS, CPA, MBA, JD (or designee)
State Controller

*[The remainder of this page has intentionally been left blank.]*

Page 27 of 28

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

DLC v. CDOC & Dean Williams, Exec. Dir.
Release and Amended Settlement Agreement

<u>APPROVED AS TO FORM ONLY:</u>

PHILIP J. WEISER
Attorney General

*Philip Barrett*      01/03/2025
_____
PHILIP BARRETT
RACHEL LIEB
Attorneys for Defendants

FOX & ROBERTSON, PC

Signed by:
*Amy Robertson*      12/19/2024 | 3:42 PM MST
_____
4C246E5159C2401...
AMY ROBERTSON

STUDENT LAW OFFICE

Signed by:
*Nicole B. Godfrey*      12/19/2024 | 3:42 PM MST
_____
6223EF2B378F40B...
NICOLE B. GODFREY

Attorneys for Plaintiff

[*End of Document*]

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

# DEAF? HEARING LOSS?

## Accommodations & resources are available for you.

| INTERPRETERS | <ul><li>You can request an interpreter at any time for any of the following interactions listed, even with no notice:<ul><li>Intake & orientation</li><li>Major medical appointments</li><li>Case management meetings</li><li>Education classes & religious services</li><li>Disciplinary investigations & hearings</li><li>PREA complaints and investigations</li><li>Classification & parole hearings</li><li>Other major meetings at work or in your living unit</li><li>Unscheduled interactions with staff</li></ul></li><li>CDOC will provide an in-person interpreter when you ask for one at least two days before you need one. With less than 2 days' notice, CDOC may provide a remote interpreter. You can also request an interpreter for other interactions. CDOC will evaluate these requests on an individual basis.</li><li>You may request an interpreter in another sign language such as Black American Sign Language or Mexican Sign Language.</li></ul> |
|---|---|
| CAPTIONING | <ul><li>You can request captioned text by "automatic speech recognition" (ASR) at any time for any interaction listed above. ASR converts speech to text so you can read it.</li><li>CDOC must provide closed captions for any videos it shows, including intake & orientation and educational videos.</li></ul> |
| TELEPHONES | <ul><li>CDOC will provide Deaf and hard of hearing (**D/HOH**) people with equal access to telephones.</li><li><u>Captioned Phones</u>: for D/HOH people who do not use sign language.</li><li><u>Videophones</u>: for Deaf people who use sign language to communicate.</li></ul> |
| TEXT NOTIFICATION OF ANNOUNCEMENTS | <ul><li>**If you are Deaf or meet certain hearing loss criteria after evaluation**, CDOC will give you a device to receive text notifications.</li><li>This device will send you a text notification of all announcements made over the loudspeaker.</li><li>This device will notify you of general announcements like chow or recreation. It will also notify you of individual announcements like medical appointments.</li></ul> |
| EMERGENCY NOTIFICATIONS | <ul><li>CDOC will provide emergency notifications by strobe lights. These lights will flash during an emergency evacuation.</li><li>**If you qualify for text notifications**, CDOC will provide emergency notifications by text notification <u>and</u> by strobe lights. These lights will be visible from your cell. If you need to evacuate during an emergency, staff also will come to your cell to tell you.</li></ul> |

**EXHIBIT A**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

| RESTRAINTS | • CDOC will not handcuff people who must communicate using sign language or handwriting behind their backs, except in an emergency or when the person poses a risk to themselves or others.<br><br>• Except during transport, CDOC will not use "black box" handcuffs on people who must communicate using sign language or handwriting unless they are a security risk. Black box cuffs will be removed during any outside medical appointment unless there is a security risk. |
|---|---|
| HEARING EXAMS | • You can request to be screened for referral to an audiologist any time during your sentence. Both ears will be screened. If either ear says "refer," CDOC will refer you to an audiologist.<br><br>• If you are over the age of 65, you will be screened every three years.<br><br>• If you have a history of risk for hearing loss, you will be screened every two years. |
| HEARING AIDS | • CDOC will provide hearing aids to all individuals who require hearing aids. You may exchange dead hearing aid batteries for new ones during med line or request new batteries from housing unit staff.<br><br>• You are permitted to have a remote control for your hearing aid if it requires one.<br><br>• CDOC will provide you with a loaner hearing aid within 1 business day after you submit a kite that your hearing aids need to be repaired, recalibrated, or replaced.<br><br>• If you use at least one hearing aid, you will be referred for a hearing examination annually to ensure the hearing aids are functioning correctly. |
| ASSISTIVE LISTENING SYSTEMS | • CDOC will provide D/HOH people with an assistive listening device that will amplify sound during group interactions when that person requests one. |
| CLEAR FACE MASKS | • When CDOC staff are required to wear face masks for public health reasons, staff will wear clear masks to communicate with **D/HOH** people. |
| VIBRATING WATCHES | • CDOC will provide a free, effective vibrating watch to individuals who qualify for text notifications. The watch should have the ability for you to set at least three alarms. It should be able to wake the average person from deep sleep. |
| OTHER | • You may request other accommodations that you need. If CDOC denies an accommodation, they must tell you why.<br><br>• You can also request an Accommodation Tracking Sheet with a list of your current accommodations. You can keep this with you at all times.<br><br>• You can ask the ADA coordinator to overturn a disciplinary action if it is related to your hearing loss.<br><br>• When you transfer to another facility, you get to keep the same accommodations unless they are a security risk. |

**EXHIBIT A**

# HEARING LOSS?

## RESOURCES ARE AVAILABLE

### INTERPRETERS



- You can request an interpreter at any time for any of the interactions listed, even with no notice:
  - Intake & orientation
  - Major medical appointments
  - Case management meetings
  - Education classes & religious services
  - Disciplinary investigations & hearings (including the initial investigation)
  - PREA complaints and investigations
  - Classification & parole hearings
  - Other major meetings at work or in your living unit
  - Unscheduled interactions with staff
- CDOC will provide an in-person interpreter when you ask for one at least two days before you need one. You can also request an interpreter for other interactions. CDOC will evaluate these requests on an individual basis.
- You may request an interpreter in another sign language such as Black American Sign Language or Mexican Sign Language.

### HEARING AIDS

- CDOC will provide hearing aids to all individuals who require hearing aids.
- You may exchange dead hearing aid batteries for new ones during med line or request new batteries from housing unit staff.
- You are permitted to have a remote control for your hearing aid if it requires one.
- CDOC will provide you with a loaner hearing aid within 1 business day after you submit a kite that your hearing aids are being repaired, recalibrated, or replaced.
- If you use at least one hearing aid, you will be provided an annual hearing examination to ensure the hearing aids are functioning correctly.

### ASSISTIVE LISTENING SYSTEMS

- CDOC will provide D/HOH people with an assistive listening device that will amplify sound during group interactions when that person requests one.

### CLEAR FACE MASKS

- When CDOC staff are required to wear face masks for public health reasons, staff will wear clear masks to communicate with D/HOH people.

### VIBRATING WATCHES

- CDOC will provide a free, effective vibrating watch to individuals who qualify for text notifications The watch should have the ability for you to set at least three alarms. It should be able to wake the average person from deep sleep.



### OTHER

- You may request other accommodations that you need. If CDOC denies an accommodation, they must tell you why.
- You can also request an Accommodation Tracking Sheet with a list of your current accommodations. You can keep this with you at all times.
- You can ask the ADA coordinator to overturn a disciplinary action if it is related to your hearing loss.
- When you transfer to another facility, you get to keep the same accommodations unless they are a security risk.

### CAPTIONING

- You can request captioned text by "automatic speech recognition" (converts speech to text for reading) at any time for any interaction listed under the 'Interpreters' section.
- CDOC must provide closed captions for any videos it shows, including intake & orientation and educational videos.



### TELEPHONES

- CDOC will provide Deaf and hard of hearing (D/HOH) people with equal access to telephones.
- Captioned Phones: for D/HOH people who do not use sign language.
- Videophones: for Deaf people who use sign language to communicate.

### TEXT NOTIFICATIONS

- If you are Deaf or meet certain hearing loss criteria after evaluation, CDOC will give you a device to receive text notifications of all announcements made over the loudspeaker.
- This device will notify you of general announcements like chow or recreation. It will also notify you of individual announcements like medical appointments.

### EMERGENCY NOTIFICATIONS

- CDOC will provide emergency notifications by strobe lights. These lights will flash during an emergency evacuation.
- If you qualify for text notifications, CDOC will provide emergency notifications by text notification and by strobe lights. These lights will be visible from your cell. If you need to evacuate during an emergency, staff also will come to your cell to tell you.

### RESTRAINTS



- CDOC will not handcuff people who must communicate using sign language or handwriting behind their backs, except in an emergency or when the person poses a risk to themselves or others.
- Except during transport, CDOC will not use "black box" handcuffs on people who must communicate using sign language or handwriting unless they are a security risk. Black box cuffs will be removed during any outside medical appointment unless there is a security risk.

### HEARING EXAMS

- You can request another audiology screening any time during your sentence. Both ears will be screened. If either ear says "refer," CDOC will refer you to an audiologist.
- If you are over the age of 65, you will be screened every three years.
- If you have a history of risk for hearing loss, you will be screened every two years.



## Questions or concerns?
### Contact the Monitoring Team.

## EXHIBIT B

1

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

<u>Exhibit C: DLC v. CDOC: Monitoring and Training Plan</u>

I.  Structure of Monitoring and Training Personnel

   A.  The "Monitoring Team" or "Team" will be comprised of a group of individuals tasked with monitoring CDOC's compliance with a settlement agreement pertaining to deaf and hard of hearing ("DHOH") inmates as amended by the parties to consult on and help implement the terms of an amended settlement agreement. These individuals may include:

      1.  A mutually agreed upon neutral evaluator ("Neutral"), who will be responsible for resolving any disputes that may arise during the Monitoring process, for approving the Activity Plan, for evaluating the information necessary to assess compliance, and for certifying compliance; A mutually agreed upon subject matter expert ("SME") who has experience with Deaf culture and technology solutions for DHOH individuals, who will be responsible for evaluating the information necessary to assess compliance; and

      2.  Administrative staff, such as one or more paralegal(s) or other paraprofessionals to assist with the monitoring process. Administrative staff will be the primary individual(s) tasked with gathering information. At least one member of the administrative staff will be fluent in ASL. If more than one administrative staff person is retained, administrative tasks such managing and organizing documents and information will be divided so as to minimize overlapping work. Administrative staff will report to the Neutral and the SME.

      3.  The Neutral and the SME will collaborate in managing and guiding the Monitoring process.

   B.  The "Trainer" will ideally be a single individual, mutually agreed upon by the parties to an amended settlement agreement, who will be tasked with assisting CDOC in adding to, amending, and/or updating and consulting on implementation of CDOC's training materials and processes. The "Trainer" may also be the same person as the mutually agreed upon subject matter expert.

II.  Monitoring Overview: Through questionnaires, review of documents, requests for information, interviews with prisoners and staff, and/or meetings with parties, the Monitoring Team will:

   A.  Assess CDOC's compliance with an amended agreement to the original Release and Settlement Agreement in *Disability Law Colorado v. Colorado Department of Corrections*, 21-cv-792-RBJ (D. Colo.), to be agreed to and executed by the parties to this case ("Amended Agreement");

   B.  Certify CDOC's implementation of the Amended Agreement as required by the terms set forth by the parties in that document;

1

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

C.  Continue to monitor CDOC's compliance through the Term of the Amended Agreement; and

D.  Assist the parties in problem solving, proposing new technologies, and resolving disputes in accordance with the procedures in the Amended Agreement.

III.  The Monitoring Team will have access to the following information:

A.  Questionnaires.

1.  The parties will agree to a questionnaire to be submitted to DHOH individuals in CDOC's physical custody in accessible format to determine accommodations and services provided and gaps in accommodations and services that should be provided to DHOH prisoners. Individuals who will receive this questionnaire will include those who (1) have requested and been approved for accommodations for hearing loss and (2) those identified by clinical staff or flagged by initial screening as having hearing loss.

2.  For Deaf prisoners whose native language is ASL or are otherwise not fluent in English, the questionnaire may be administered, and the results recorded, in ASL or other sign language by an individual fluent in that language. If no such person is available, the Parties and the Monitoring Team will confer and agree on a method to administer the questionnaire.

3.  The parties anticipate that this questionnaire will be administered during the Implementation Phase, to inform the parties and Monitoring Team of the status of implementation and potential need for improved programs. If the Team deems it useful, this or a similar questionnaire may be used later in the process to assess compliance.

B.  Interviews

1.  The Monitoring Team may conduct interviews with an agreed upon group of DHOH individuals ("Focus Group"). The Focus Group will include all Exemplar Constituents who remain in CDOC's physical custody as well as other individuals selected to address a range of issues and facilities, selected after receiving responses to the questionnaire.

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

2. The Monitoring Team may also conduct interviews with CDOC staff as deemed appropriate by the Monitoring Team. The Monitoring Team will inform DLC and CDOC of their intent to conduct interviews, and the proposed times, locations, and/or methods of conducting the interviews, with CDOC staff at least two business days in advance of the interviews (in the case of remote site visits) and at least five business days (in the case of in-person site visits) to provide time for scheduling-related logistics. These interviews may include interviews with individuals who were involved with the contract negotiations with CHP in order to determine CDOC's compliance with the provision related to CHP negotiations in the Amended Agreement. The Parties agree that the Monitoring Team will be permitted to conduct interviews with staff without the presence of a party representatives. Either Party may request to be present at such an interview and provide its reasons for that request. The Monitoring Team will decide in its discretion whether to permit a party representative to be present. The parties agree that, for the first three months after execution of the Amended Agreement, there will be a presumption that party representatives will be present for meetings with staff. After three months, the parties will meet and confer to decide whether to extend that presumption for any additional time.

3. Within one week of any interview(s) for which counsel or a representative of CDOC is not present that suggest(s) a failure to comply with the Amended Agreement, the Monitoring Team will send the parties a short memo describing the nature of the potential noncompliance, the measures needed to remedy the noncompliance, and the location and the name(s) of staff or prisoners involved, provided that, if the Monitoring Team determines that there is a real risk of retaliation, they may withhold the names of staff or prisoners involved.

C. Documents and other information. The Monitoring Team may review documents for the period of 3 months prior to the execution of the Amended Agreement through the time the documents are provided to the Monitoring Team to determine CDOC's implementation of the Amended Agreement. Later productions will supplement previous productions, that is, start from the date of the previous production. These documents may include:

1. Offender and medical files, grievances, and requests for accommodation from Focus Group members.

2. On-site and VRI interpreter invoices.

3. Rosters for classes and other programs attended by Focus Group members.

4. All MMCall logs.

5. ASR transcripts for Focus Group members.

3

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

6.   Additional information as reasonably requested by the Monitor.

7.   Documents relating to CHP's contracts with CDOC as necessary to assess compliance with relevant provisions of the Amended Agreement.

D.   Site visits targeted to reach locations with higher numbers of compliance issues involving D/HOH prisoners.

1.   The Monitoring Team may conduct in-person site visits of facilities as deemed necessary by the Monitoring Team for the purposes of determining CDOC's implementation of or compliance with the Amended Agreement. The Monitoring Team shall give CDOC at least five business days' notice in advance of the site visit(s) to ensure appropriate background checks are completed and adequate facility notice is given.

2.   In addition to in-person site visits, to save travel time and expenses, the parties and Monitoring Team will collaborate on a method of conducting site visits using remote video connections. The Monitoring Team shall give CDOC at least two business days' notice in advance of the remote visit(s) to ensure availability and that adequate facility notice is given.

E.   The Neutral and the SME will confer and jointly decide on decision-making procedures for determining whether any additional investigative steps contained in this Monitoring and Training Plan are necessary including, but not limited to, in-person or remote site visits, questionnaires, or additional document requests.

F.   The Monitoring Team will not investigate beyond the bounds of the Amended Agreement, though CDOC expresses that it remains open to observations concerning improved practices in aid of the DHOH population generally.

IV.  Implementation Phase (Phase 1)

A.   In the first 90 days of the Amended Agreement, CDOC will gather information related to the state of compliance with and implementation of the Amended Agreement and provide such evidence to the Monitoring Team. The Monitoring Team will also gather information independently in order to assess implementation of the Amended Agreement.

B.   Based on the information it gathers and input from the Monitoring Team, by an agreed deadline, CDOC will draft an Activity Plan documenting the steps it intends to take to comply with the Amended Agreement. CDOC will provide the Activity Plan to the Monitoring Team and the Plaintiff. The parties and the Team will confer concerning any proposed changes to the Activity Plan, with the Neutral having final approval.

4

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

C.  The Monitoring Team will prepare an initial report to the parties that reflects the state of compliance with the terms of the Amended Agreement at the end of the Implementation Period. The Monitoring Team will allocate the work necessary to draft and finalize this and other reports so as to maximize the efficiency of the process.

D.  The initial report to the parties will:

1.  Document status of compliance with the Amended Agreement.

2.  If appropriate, detail steps necessary to come into compliance.

3.  Analyze systems for providing effective communication and propose strategies to improve same.

V.   Initial Compliance Phase (Phase 2).

A.   For a period of six months, starting after the Implementation Phase, the Monitoring Team will maintain contact with the Focus Group and relevant CDOC staff as the Team deems necessary to ensure that systems put in place during the Implementation Phase continue to be used properly to ensure compliance.

B.  During this period, CDOC will produce updated documents listed in § III.C to the Monitoring Team on a monthly basis and the Team may conduct in-person or remote site visits as the Monitoring Team deems necessary in accordance with the processes identified in § III.

C.  The Monitoring Team will issue monthly reports during this Phase.

D.  The parties' goal is that, within the first approximately three months of the Initial Compliance Phase, the Neutral will be able to certify that CDOC is in compliance with the Amended Agreement.

VI.  Continued Compliance Phase (Phase 3)

A.  The Continued Compliance Phase will cover the same substantive ground as the Initial Compliance Phase, but it is anticipated – due to improved compliance and fewer documents to review – that it will require less time from the Monitoring Team. During this Phase – the length of which will be determined by the point at which the Monitoring Team certifies compliance – the Team will continue to communicate with staff and the Focus Group, review documents, and conduct site visits as deemed necessary by the Monitoring Team to ascertain that compliance is continuing.

B.  The Monitoring Team will issue quarterly reports during this Phase.

5

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

VII. Meetings with parties:

A.  The parties will meet jointly with the Monitoring Team 30 days, 60 days, and 90 days after execution of the Amended Agreement ("Milestone check-in meetings").

B.  After the Milestone check-in meetings, the Monitoring Team will hold meetings with the parties within two weeks after the Monitoring Team issues each report, and as needed throughout the Term. Accordingly, the parties are expected to meet at least monthly during the Initial Compliance Phase and quarterly during the Continued Compliance Phase, which schedule can be adjusted as needed to accommodate participants' schedules.

VIII.  Training. The Trainer will:

A.  Review and evaluate all CDOC training materials and methods that relate to accommodations for, auxiliary aids and services for, and working with D/HOH prisoners, such as:

1.  Basic training.

2.  Periodic refresher training.

B.  Propose improvements to these training materials and methods.

C.  Train-the-trainers: train and assist CDOC in training the individuals who will be responsible for carrying out the training going forward.

D.  Prepare or assist with preparing an agreed number of short videos to be played at roll call to reinforce basic and refresher training and underscoring key points of compliance with the Amended Agreement.

E.  Assist the parties in reviewing and, if necessary, redrafting and rerecording Exhibit A to the original Release and Settlement Agreement.

F.  Periodically continue to assess adequacy of training materials, check adherence to training schedule; propose changes where appropriate.

IX.  Dispute resolution

A.  The parties will agree on a procedure to resolve disputes regarding the adequacy of CDOC's compliance with the Amended Agreement or the means of achieving such compliance. This procedure will be available following the Monitoring Team's certification of implementation and may include:

1.  An initial written notice of dispute to the other party;

**EXHIBIT C**

Docusign Envelope ID: C6825B07-9A38-4446-B85C-9D733C2A409F

2.  A conferral meeting within 14 days after the initial written notice of dispute;

3.  A cure period for CDOC or DLC following the conferral meeting; and

4.  Submission of the dispute to the Neutral in the event the parties cannot resolve the dispute following the cure period. The Neutral may require the parties to mediate the issue with the Neutral before issuing a written decision. Following submission of the dispute and mediation, if required, the Neutral will issue a written decision on the dispute in accordance with the terms of the Amended Agreement.

B.  In the event a party is still not in compliance following the procedure in § IX.A after the Monitor has issued a written decision, the unsatisfied party may seek enforcement of the terms of the Amended Agreement to the Court.

**EXHIBIT C**